UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION



\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| TAMRA BENNETT, | CIV 13-1016 |
| Plaintiff, | |
| -vs.- | MEMORANDUM OPINION AND ORDER |
| ANN MARIE MILLER, | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff Tamra Bennett ("Bennett") filed a complaint in South Dakota Circuit Court, Fifth Judicial Circuit, Walworth County, to foreclose on a contract for deed. Defendant Ann Marie Miller ("Miller") filed a notice of removal, along with a motion for leave to proceed *in forma pauperis*. Plaintiff filed a motion to remand, for attorneys fees, and for an injunction preventing defendant from filing further frivolous *pro se* actions. Miller filed no response.

The caption in state court described the defendant as Ann Miller acting with a power of attorney for a limited liability company. This is a curious caption, to say the least. If you sued General Motors Corporation you would not name the corporate president who happened to sign for GMC. The confusion stems from the contract for deed having been executed in California without Bennett's attorney being present. The confusion was caused by Miller who has since admitted that she was, in truth, the buyer. If an L.L.C. had some interest in the purchase, Miller would not be allowed, as a non-lawyer, to represent the L.L.C. in court. There is great doubt whether the L.L.C. named even exists. Miller has never produced any power of attorney for the L.L.C. Miller is the sole party in interest as the buyer under the contract for deed.

## BACKGROUND

On February 2, 2012, Bennett, a resident of Mobridge, South Dakota, entered into a contract for deed to sell eight rental properties to J Gould LLC, represented by Miller to be from Jefferson, Colorado. The contract was signed by Miller, who represented that she had a power of attorney to sign for J. Gould LLC. The contract was executed in San Diego, California.

Bennett filed a complaint in Walworth County, Fifth Judicial Circuit, South Dakota, seeking to foreclose on the contract for deed on August 6, 2012. Miller filed an answer on August 17, 2012, representing her address to be Denver, Colorado, and claiming she signed the contract for deed as a tenant in common with J Gould LLC. She also counterclaimed for the down payment and monthly installments paid for the property and sought punitive damages for fraud and bad faith.

Miller falsely claims that the contract for deed signed is not the version claimed by plaintiff but is instead a "marked-up copy" which substituted Colorado for South Dakota in the title insurance section, contained a hand written Colorado choice of law provision, struck through the standard contract for deed forfeiture of payments provision, and struck the merger clause. South Dakota Circuit Court Judge Jack Von Wald rejected Miller's claim that the "marked-up copy" is the copy executed by the parties and that finding is entitled to preclusive effect.

The state court materials filed in this case show that Miller defaulted on the contract for deed by failing to obtain insurance coverage for the properties and by possibly "spooking" insurance companies so as to make the property uninsurable. When given notice to cure, Miller contacted insurance companies, telling them the properties had mold damage and soliciting notices of uninsurability.

Miller filed in state court frivolous motions in the foreclosure proceeding for default judgment and several for dismissal of the receiver. All such motions were denied. A trial was started on January 25, 2013, at which time plaintiff presented her case. The

continuation of the trial was scheduled for May 3, 2013. As shall be discussed later, on April 23, 2013, Miller filed a Chapter 13 Bankruptcy petition in the District of Wyoming, preventing the conclusion of the foreclosure trial. The bankruptcy petition was dismissed in July. Miller thereafter noticed the foreclosure trial for May 2014. Bennett noticed the trial for September 2013. Miller thereafter filed a notice of removal on August 26, 2013.

I find it disturbing that Miller, who represented that she gets her mail in Denver, Colorado, claimed she lived in Wyoming. Upon further review of federal court records I discovered that she has a long history of filing frivolous suits and making misrepresentations in federal court. I take judicial notice of such court filings. Green v. White, 616 F.2d 1054, 1055 (8th Cir. 1980).

Miller is a disbarred attorney who formerly practiced law in Virginia with Jeffrey Kessler. Jennifer Kelley worked as a paralegal in their firm. In May 2009, Kelley informed Miller that she and Mr. Kessler had married the previous month. What followed is documented in Virginia state court criminal files as well as many federal district court and state court civil files and can be described as a pattern of stalking, physical assaults, and harassing and vexatious litigation by Miller against the Kesslers, their parents, and their lawyers. In all such cases Miller was allowed to proceed *in forma pauperis*, using her legal background to proceed *pro se*. The defendants named in her cases have not had the luxury of defending without incurring legal fees and court costs. Her claims involving the Kesslers are documented in an order issued by Adams County, Colorado District Judge Edward C. Moss in his January 27, 2012, order in case Nos. 10 CV 1700 and 10 CV 1702, enjoining Miller from appearing *pro se* in Colorado state courts and awarding costs and attorneys fees against Miller:

> Ms. Miller has filed five civil actions against Jeffrey Kessler, four against Jennifer Kessler, one against Donald Kessler (Jeffrey's father), one against Constantine Kessler (Jeffrey's mother), six against the Kesslers' various attorneys, and one against Colorado District Judge Charles Scott Crabtree. These suits have been filed in

3

> the United States District Court for the District of Colorado, the District of Wyoming, and the District of Columbia. She has also filed bankruptcy adversary proceedings in the United States Bankruptcy Court for the District of Colorado.
>
> * * *
>
> In addition to her civil and bankruptcy claims, Ms. Miller filed three dissolution actions against Mr. Kessler in three different Colorado counties, despite, as courts have repeatedly determined, that she was never married to him.
>
> * * *
>
> Ms. Miller initiated these two lawsuits on October 18, 2010 by making claims against Mr. Kessler in Case No. 10 CV 1700 for slander, breach of contract, and intentional infliction of emotional distress; and similar claims in Case No. 10 CV 1702 against Mrs. Kessler.
>
> * * *
>
> On December 2, 2010, District Judge Katherine Delgado dismissed the underlying claims with prejudice, finding that the two actions were "vexatious" and brought in "bad faith to annoy and harass Defendants." On December 28, 2010, Judge Delgado issued orders awarding Defendants reasonable attorney's fees.
>
> * * *
>
> On June 16, 2011, the Clerk of Court issued a <u>Writ of Garnishment</u> against Ms. Miller to enforce the <u>Order for Judgment</u>. In response, Ms. Miller filed a claim of exemption. She also initiated a Chapter 13 bankruptcy proceeding in the United States Bankruptcy Court for the District of Colorado and named eight different parties in adversary proceedings, including: Jeffrey Kessler, his wife, his mother, his father, their Colorado attorneys, and Judge Crabtree.

Judge Moss found that Miller intended to continue to file lawsuits against the Kesslers until Mr. Kessler leaves his wife. Judge Moss held that Miller was not filing lawsuits to vindicate legal rights but instead to "harass Mr. Kessler and exact vengeance upon him."

4

Miller's litigation tactics against Bennett are consistent with her harassing litigation against the Kesslers. Miller is a frivolous whirlwind who will continue to file frivolous and malicious lawsuits unless prevented from doing so.

Miller filed a complaint (CIV 12-2063) alleging breach of the contract for deed against Bennett in the District of Colorado on August 6, 2012, the same date that Bennett filed the foreclosure action in Walworth County, South Dakota. Miller alleged that she was a citizen of Colorado and that her address was a P.O. Box in Denver. She falsely claimed that the contract for deed contained a Colorado choice of law provision. She falsely claimed in court documents that the contract for deed was based upon negotiations that took place in Colorado. She was allowed to proceed *in forma pauperis*.

The Colorado matter was scheduled for a hearing on May 10, 2013, on Miller's motion for a default judgment and Bennett's motion to dismiss. Mr. and Mrs. Bennett traveled to Colorado for the hearing but Miller called in to state that she had car trouble, could not appear at the hearing telephonically, and could not appear the next day. The hearing was rescheduled for June 7, 2013, and Miller was warned that her failure to appear at that hearing could result in dismissal of her case. On the afternoon before the hearing, Miller filed a motion to cancel the hearing based upon claimed ongoing settlement negotiations. Such representations to the court were false and were known to be false by Miller. The parties were ordered to appear as scheduled. On the day of the hearing, Miller advised the judge that she was very ill and could not continue. Despite great patience and numerous warnings from the U.S. Magistrate that the hearing was going to continue with or without her, she left.

United States Magistrate Judge Craig B. Shaffer issued a report and recommendation on August 12, 2013, in District of Colorado CIV 12-2063 wherein he made findings that:

> Ms. Miller has embarked on a similar campaign of harassment against the Bennetts. On December 28, 2012, Ms. Miller send (sic)

> an email to the Bennetts' attorney, Rick Cain, in which she alluded to pending litigation in South Dakota and Colorado.
>> I will not give up. If Mr. and Mrs. Bennett die of natural causes before I win, I'll go after their son. I simply will not give up. I will stop when I actually get my $35,000 back. That's when it's over. I don't care how many times I lose. If I lose in America, I'll go to Canada and Argentina simultaneously.
>
> Between May 21 and May 28, 2013, Ms. Miller forwarded 48 email messages, many consisting of junk email or spam, to the Bennetts' lawyer in Colorado solely to harass counsel and increase the Bennetts' litigation costs. For example, at 12:53 am on May 23, 2013, Ms. Miller emailed counsel with the explanation: "Just woke up I can't sleep. I just thought if Tamra Bennett had to pay you $125 for reading this email that might help. We will see. Goodnight."
>
> I further note that on February 13, 2013, during the pendency of the instant action, Ms. Miller filed an Involuntary Petition against Tamra Bennett in the United States Bankruptcy Court for the District of South Dakota. That Petition was dismissed by the Bankruptcy Court on February 26, 2013 upon a finding that "the petitioning creditor [Ms. Miller] has failed to comply with the Order denying Application for Waiver of Filing Fee and Setting Certain Deadline . . . and for cause shown." As a result of this involuntary bankruptcy petition, Ms. Bennett's credit cards were cancelled and had to be re-established.

Judge Shaffer's report and recommendation was adopted by Colorado Chief District Judge Marcia S. Krieger on September 10, 2013. The case was dismissed and Miller was enjoined from filing further *pro se* actions in the District of Colorado without prior leave of court. Miller v. Bennett, 2013 WL 4835353 (D. Colo. September 10, 2013).

On December 4, 2012, Miller filed a complaint in the District of Colorado against Gregory Excell, Stratford Peakview, L.P., and GREP Southwest, LLC (CIV 12-3158), alleging breach of contract. She represented that her residence was in Centennial, Colorado. She was allowed to proceed *in forma pauperis*. Her claim arose out of a sublease agreement with Excell which was not approved by the owner and property manager of the apartment complex because Miller failed a background check because of a

prior conviction for child abuse. Miller had paid Excell $1,000 but was seeking $561,000 in damages. The case was dismissed on August 2, 2013, for failure to state a claim and failure to effectuate service.

Also on December 4, 2012, Miller filed a complaint in the District of Colorado against Wells Fargo Home Mortgage and Chase Manhattan Bank (CIV 12-3159), alleging breach of contract arising out of the defendants disposing of her personal property stored at the home she was purchasing on a contract for deed and which was in foreclosure. She represented that she was a resident of Centennial, Colorado. She was allowed to proceed *in forma pauperis*. That case was dismissed on June 6, 2013, based upon Miller's repeated failures to appear at court hearings and failure to comply with an order to show cause.

On December 6, 2012, Miller filed a complaint in the District of Colorado against Virgin Mobile, USA, LP, claiming defendant fraudulently agreed to provide 4g service when they knew it was 3g speed. She was allowed to proceed *in forma pauperis*. Defendant filed a motion to compel arbitration and the case was dismissed on February 20, 2013, based upon a stipulation of dismissal.

On February 1, 2013, Miller sent an email to attorney Rick Cain stating, *inter alia*:

> you won't get me and Jack banned from every single jurisdiction in the US. We're not having a hearing on May 3. We are both going to file bankruptcy before then, and both of us are familiar with motions practice in bankruptcy court. First he files a 7, I file a 13, then, he files a 13, I file 7, then we both file a 13. (the reason for those chapters and the sequence will be obvious when you consider bankruptcy law and the nature of our debts). I'll win. Not before Myren, but, I will win. I know more about procedure that he does, and, I don't have to pay myself a retainer every time I go into a new jurisdiction. The Bennetts do.

She sent several other emails threatening to cause additional litigation and expense if Bennett did not return her $35,000 payments made on the contract for deed.

On April 23, 2013, Miller filed a Chapter 13 bankruptcy petition in the District of Wyoming, representing that she resided in Hanna, Wyoming, but her mailing address was a post office box in Denver, Colorado. She stated in that petition that she had been residing in Hanna, Wyoming, since October 2012. She claimed that she had been in Centennial, Colorado "for a few days in December 2012." That petition was dismissed on July 10, 2013, for failure to pay the filing fee installments.

On May 15, 2013, Miller sent an email to Charles Goldberg, a Denver attorney representing Bennett in the Colorado District Court breach of contract case. She stated in that email that "Jack will sue Bennett in federal court as soon as mine is dismissed. It will be like playing whack a mole. She cannot really win just whack moles until giving me my money back or being fair in some manner."

Miller stated at a June, 7, 2013, hearing in front of Judge Shaffer in the United States District Court for the District of Colorado in CIV 12-2063 that she did not live in Colorado. He thereafter made a finding that Miller no longer resided in Colorado.

Miller initiated a divorce proceeding in Colorado state court on July 10, 2013, captioned Miller v. Gould. She represented that, as of July 10, 2013, she had been a resident of the State of Colorado for three years.

On August 2, 2013, she filed three separate actions in the United States District Court for the District of Alaska against Bennetts' South Dakota attorney, Rick Cain, the Kesslers, and Bennett. She claimed that Mr. Cain almost ran into her with his car in Ketchikan, Alaska. She sought $440,000 in damages. She claimed she let the Kesslers walk her bobcat in Anchorage, Alaska, and they did not keep him on a leash. She sought $690,000 in damages. She claimed Bennett ran her car over Miller's cat in Ketchikan, Alaska. She sought $590,000 in damages. In all those cases, she sought leave to proceed *in forma pauperis*. All three actions were dismissed as frivolous or malicious.

Miller filed the notice of removal in this present case on August 26, 2013, representing that she is a resident of Hanna, Wyoming, with a mailing address of Denver.

She filed a second voluntary bankruptcy petition, this time under Chapter 7, in Wyoming two days later, on August 28, 2013, again representing that she was a resident of Wyoming but her address was in Denver. She filed adversary actions in that bankruptcy case that same date against Bennett, the Kesslers, and others, seeking $3.5 million in damages in each adversary action. She sent an email to an attorney stating that the bankruptcy petition was filed to stop the state court foreclosure trial. The bankruptcy petition was dismissed on September 30, 2013, because it was filed 49 days after the Chapter 13 case was dismissed, in violation of the Bankruptcy Code.

Miller sent an email to attorney Rick Cain on August 27, 2013, advising that she had obtained a default judgment against Cain, his parents, his son, and Bennett in the amount of $2 million in Canada. She threatened to "take your parents (sic) house and place your son in involuntary bankruptcy" if she did not "start getting payments right away."

Miller sent an email to attorney Rick Cain on September 6, 2013, offering to settle. She stated in that email that "[t]here is no limit on how many times I can remove a case."

## DECISION

28 U.S.C. § 1915(a)(1) authorizes district courts to allow civil litigants to commence suit without the prepayment of the filing fee. Section 1915(e)(2)(B) authorizes the district court to dismiss a proceeding wherein the complainant is seeking to proceed *in forma pauperis* if the action is frivolous or malicious or fails to state a claim on which relief may be granted.

> Section 1915(d)[1] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal

---

[1] Prior to the Prison Litigation Reform Act, Pub.L. 104-134, § 804, dismissal was authorized under 28 U.S.C. § 1915(d).

9

> Rule of Civil Procedure 11. To this end, the statute accords judges . . . the authority to dismiss a claim based on an indisputably meritless legal theory.

Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 1833, 104 L.Ed.2d 338 (1989).

"To the extent that a complaint filed *in forma pauperis* which fails to state a claim lacks even an arguable basis in law, Rule 12(b)(6) and § 1915(d) both counsel dismissal." *Id.* at 327, 109 S.Ct. at 1833.

Miller filed the notice of removal more than one year after the filing of the state court foreclosure action she seeks to remove to federal court. Pursuant to 28 U.S.C. § 1446(c), a case may not be removed on the basis of diversity jurisdiction "more than one year after commencement of the action, unless the district court finds that the plaintiff has acted in fad faith in order to prevent a defendant from removing the action." Miller contends in her notice of removal that, on August 15, 2013, she received an updated discovery response making a claim for $55,423 in damages from attorney Rick Cain, bringing the total amount in controversy within the jurisdictional amount for diversity jurisdiction. Rick Cain has, by affidavit, denied having sent such a document to Miller. A review of the purported discovery document shows that the signature does not match any other document on file signed by Rick Cain.

Miller has not shown that the amount in controversy brings this matter within the jurisdiction of the district court. She has further not shown that Bennett acted in bad faith in order to prevent timely removal. To the contrary, the only bad faith evident in this matter is attributable to Miller.

The United States Court of Appeals for the Eighth Circuit has held that there is "no right of access to the courts to prosecute an action that is frivolous or malicious." In re Tyler, 839 F.2d 1290, 1292 (8th Cir. 1988). Further, the Bennetts "have a right to be free from harassing, abusive, and meritless litigation." *Id.*

> Federal courts have a clear obligation to exercise their authority to protect litigants from such behavior. The Court may, in its discretion, place reasonable restrictions on any litigant who files

10

> non-meritorious actions for obviously malicious purposes and who
> generally abuses judicial process. These restrictions may be directed
> to provide limitations or conditions on the filing of future suits.

*Id.*

Miller's almost unending abuse of *in forma pauperis* access to the federal courts is well documented. In addition to her prior frivolous and malicious filings in other federal and state court actions, her Wyoming bankruptcy filing constitutes an abuse of process in that case. District Courts faced with litigants "who in bad faith consistently abuse the judicial process and privilege of litigating at public expense" possess discretion to adopt pre-filing review procedures restricting the availability of cost-free access to court. Peck v. Hoff, 660 F.2d 371, 374 (8th Cir. 1981).

The conduct of Ann Marie Miller is scandalous. I practiced law as a trial lawyer for 30 years before taking office in 1995. During my years of private practice and serving as a United States District Judge I have never seen any litigant or attorney act in such an outrageous manner as Ms. Miller. It is no surprise she was disbarred. On a consistent bases, she acts in bad faith, in conscious disregard of rules governing conduct in litigation, and seeks to harass litigants, judges, financial institutions and attorneys, acting in a malicious manner. She needs to be stopped in her tracks.

Based upon the foregoing,

IT IS ORDERED:

1. Defendant's motion, Doc. 4, for leave to proceed *in forma pauperis* is denied.

2. Plaintiff's motion, Doc. 7, to remand is granted.

IT IS FURTHER ORDERED that the Clerk's office for the District Court for the District of South Dakota shall not accept for filing any documents in a civil case from Ann Marie Miller without prior written approval from a United States District Judge.

IT IS FURTHER ORDERED that Ann Marie Miller is hereby enjoined from filing any claim, counterclaim, or third-party claim in a *pro se* capacity in the United States District Court for the District of South Dakota and in any circuit court of the State of South Dakota unless she has first obtained leave of the judge to whom the case is assigned on the terms set forth below. In seeking leave to file a *pro se* claim, counterclaim or cross-claim, Ann Marie Miller shall file a motion entitled "Petitioner Seeking Leave to File a *Pro Se* Claim" ("Petition") with the state or federal Clerk of Court. The petition shall include, as exhibits:

A. a copy of this memorandum opinion and order;

B. a copy of the proposed complaint, counterclaim, or third-party claim Ann Marie Miller seeks to file;

C. a statement, made under penalty of perjury, advising whether each opposing party against whom the claim, counterclaim, or third-party claim is made has been a party to, witness in, judge, attorney, or otherwise involved with, any prior lawsuit in which Ann Marie Miller was also a party and, if so, Ann Marie Miller shall identify the name of that case, the jurisdiction in which it was filed, the case number, the particular claims (if any) that Ann Marie Miller asserted against that person, and the disposition of such claim(s);

D. a statement, made under penalty of perjury, identifying all jurisdictions in which Ann Marie Miller has been sanctioned, enjoined, or otherwise restricted in her ability to commence litigation, including the case name, case number, jurisdiction, and date of each such order;

E. a statement, made under penalty of perjury, identifying any monetary judgment or injunction imposed against Ann Marie Miller by any court that remains outstanding, including the case name, case number, jurisdiction, and date and contents of such judgment or injunction; and

F. a statement, made under penalty of perjury, representing that the claims in the tendered complaint, counterclaim or third-party claim are, to the best of Ann Marie Miller's knowledge, formed after an inquiry reasonable under the circumstances, are not frivolous or taken in bad faith, are well-grounded in fact and law, are not interposed for any improper purpose, and have not been raised by her and adjudicated in any prior federal or state action.

Any *pro se* claim, counterclaim, or third-party claim advanced by Ann Marie Miller in violation of this injunction may be summarily dismissed by the presiding judge or the proposed filing disallowed.

IT IS FURTHER ORDERED that attorney fees are awarded in favor of plaintiff, the amount to be determined based upon a detailed affidavit to be submitted by Bennett's attorneys and considered by the Court. The Court reserves jurisdiction to so act.

IT IS FURTHER ORDERED that any further filings by Ann Marie Miller which are intended to circumvent this memorandum opinion and order will subject Ann Marie Miller to a possible finding of contempt with possible punishment to be imposed for civil or criminal contempt or both. The Court reserves jurisdiction to so act.

Dated this 6th day of January, 2014.

BY THE COURT:

*[Signature]*
CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: *[Signature]*
    DEPUTY
(SEAL)

13